First case for argument, 20-12-22, Western Missouri, B.W.C. et al. v. Randall Williams et al. and 20-22-07, Western Missouri, G.B. et al. v. Crossroads Academy Central et al. Well, the court will hear from Mr. Baker. Thank you, Your Honor. Linus L. Baker, appearing on behalf of all the appellant families and children, I'd like to reserve the remittal. All right, I see my... Thank you, Your Honor. I think this is a simple, at least straightforward case presented with simultaneous and fundamental rights for the parents and children. I think it's a fair characterization to describe these parents as a type of the 1972 Yoder parents. I think these parents are, to put it some way, supersized and on steroids because of the many other interrelated fundamental rights at issue. I say fundamental, and maybe in today's vernacular, I might describe them as essential. I think the route this court takes is to first look at these multiple rights because I think the biggest shield that the appellees have raised is this idea that the law is neutral and generally applicable. If you look at this as Yoder parents, there are fundamental rights that are being at issue here simultaneously. You have the parent's right to parent. You have the parent's right to provide informed consent to a vaccine injecting their child. You have their right to exercise their own religion in terms of deciding whether or not to provide that consent. Then you have the child's right to his or her own bodily integrity. Then, coupled with that, you have the Missouri scheme then requires these parents to speak. It's coupled with a communicative activity, which is this. Missouri doesn't say if you have a religious belief that's contrary to this, it doesn't apply. What they tell these parents is you must do certain things to exercise your religion. You've got to communicate first. You have to communicate in writing. You have to communicate to a specific person. Counsel, can I ask you about that? Talk about the communication. The communication, as we know, is the Form 11. What I wanted to ask you was there were a couple of plaintiffs here where it wasn't clear to me whether they had filled out a Form 11. Those were the Cheeks family and the Robinson family. Could you address that and let me know whether or not they have actually filled out a Form 11 or what the status is on that? Your Honor, that part, the petition doesn't say one way or the other. In particular, the Cheeks have a son that their particular situation was they didn't think they had gotten the child vaccinated on this particular vaccine. So it's unclear as to that particular issue. The petition just doesn't speak to that in particular. Counsel, I understand even more plainly that in Miller and Clever, those high schools, they didn't fill out the form. They went to school. They got no injury of any kind, right? That part I don't know, Judge. Well, my goodness, Counsel, they're your clients. The other side says that they're in school and they didn't fill out the form. What's the truth? Well, the petition says that they required the form, and from my memory, I think they completed the form. They had to do all that, and they did it. Huh. The other side said the opposite. You didn't reply to it, I don't think. Well, again, this is based on the petition. I don't think the lower court ever said that form 11 wasn't an issue with those particular parents. And is that all of the students in the one lawsuit, the Miller High School and Clever High School? Well, maybe elementary school. The Miller School and the Clever School? We've got the Crossroads School. That's a different case, Counsel. Tell me if I'm wrong. Okay. But in the one case, we only have the Miller and Clever students, right? No, you have the Baker students in there, too. You have the one Baker student in the first case, and then you have the other Baker students in the second case. Okay. All right. So there's multiple rights at issue here. Well, before you get to that, I hate to do this, but one more question on standing. I am concerned about standing. It's your burden to prove standing, and there's two possible harms that I've identified here. One is a past harm for filling out the form 11, which gets to your compelled speech claim, and the other is a future harm for being kicked out of school, one of the kids being kicked out of school. Can you just give me your best argument as to why the families here have standing? Well, sure. Let's start with the Bakers. They were expelled out of school. All three children were denied an education over this, and they've been deprived of that education now for several, several months. Okay. Bakers is number one. What about the other families? Well, the other parents simply are subjected to this statutory requirement that they must either consent to vaccinations or submit this religious accommodation. And the religious accommodation is an unconstitutional accommodation requirement that they were required to be subjected to. They did subject themselves to it. The form 11 is unconstitutional. It's compelled speech. So, yes, they did it. They don't want to have to do it again, and so I think declaratory relief, the threat of, you know, we're going to have to require that again and again and again. They shouldn't have been required to do it in the first instance. So I think that they're standing there. They say that they have children that are in the compulsory school regiment. They're going to have to keep sending these kids to school every year. So this isn't a someday kind of thing. We know for a fact that they're going to have to send these children to school, vaccine compliant, or they're going to have to comply with this other accommodation regiment that Missouri forces them to do. So I think they're standing, and I don't, the lower court presumed that we had standing. And so, but nevertheless, that is the standard. Mr. Baker, has BWC graduated? That I am not sure either, Judge. He was, I think, a bit of a, as I recall, a special needs. So I'm not sure if he's got an IEP. The petition doesn't speak to it, but I'm not sure if that situation has caused him to be out of the public school system yet. Yeah, I just wonder if his case might be moved. I don't know. Like I say, I think he had a special needs issue, and that can prolong that education beyond 18. So I think the pathway this court takes, the Missouri statutory framework and its regulatory framework implicates all these multiple rights. And the parents don't, cannot provide consent, voluntary consent to any of these things, because Missouri criminalizes the fact that these children are not vaccinated because the statute says they have to go to school, they have to go to school vaccine compliant. And if you don't, it's a crime, it's a misdemeanor. Unless you fill out this form, counsel, right? Unless you fill out form 11, right? Well, no. Well, for the religious, for the religious part, but they, but the statutory framework says you, you, if they don't go to school and they don't go to school, if they're not vaccine compliant, it's classy misdemeanor. Kids can go to foster care or children need. Now Missouri said, then you've got to, the statute says, you just simply make a written statement to the school administrator regulation comes in since, well, we're going to add to that. We're going to make you associate with our, you got to go get this original form, kind of like a speech license. You got to go apply for it. Then you've got to run through this gauntlet. And then after all of that, then we'll give you this original form that you take in hand that conveys this government message that you don't want to convey. Now, wait, counsel, the government, let me interrupt you. The government message I read here is ultimately the decision is yours. We have to, let me finish. I have a, this is a 40,000 foot question, but we have two well-written opinions with this court, the rounds court in bank. And that was where the doctor has to certify in bank decision of this court. The doctor has to certify. And we said, there was nothing wrong with that. And then we've got the Doe versus Parson case that says that the mother seeking the abortion can have to, has to view the sonogram, take a brochure and then sign that she did that.  So from a 40,000 foot in your case control by either of those two decisions, Not at all judge. And let me tell you why the, that this isn't an informed consent. This is, it has nothing to do with that, but let's just say the pregnant woman comes in and under that scenario and they want to give her this information and they say here, take it. All right, that part's okay. But what you can't do is you can't tell the pregnant woman, okay, now you go take that information. We just gave you and you go communicate it to somebody else. That's what form 11 is. So if it was just a matter of wait council council, I got to interrupt you. Those that's communicated the state of Missouri, that's communicated to the police department, the forms they filled out at those clinics are not by the pregnant woman. So that the pregnant woman's communication is personal to her. There's no requirement that she has to reconvey that information herself to somebody else. That would be compelled speech. That's just like Edison. You get a flyer. Here's the information. That's where the lower court didn't understand that this regulation then requires, for example, the person receiving the Edison bill to turn around and go give it to a neighbor. So this form that they require these parents to take, it's their communication to the school administrator. If they require it and they require that message, whatever it says is a message they don't want to be associated with. They don't want to convey it. They don't want it in there. But why isn't this analogous to it? Why isn't this analogous to an informed consent warning type of message? And the reason why I say that is because the second paragraph of the message talks about, you know, if you, if you refuse this, the decision is yours, but during a situation in which there's an outbreak in the school, your child may not be, may be required not to come to school if he or she is not vaccinated. And that seems to me to just be providing a legal warning. They're saying, look, you can make this decision, but there could be some consequences for your child. And we want you to know about that. But judge that I get all that. If they just handed a brochure out to the parent and said, here you go. That I would agree with you, but this form 11 isn't a brochure. It is the parent's communication to the school administrator. They can't talk to the school administrator unless they use this form. And that form then becomes the parent's communication from her to the school. So that's where all this analysis then, that's where we're not understanding what exactly this form becomes in the hands of the parent. So I, I'm not saying they can't hand out information. That's, that's what judge Benson saying. I get all that. They certainly have a right to convey that information. What they can't do is make the parent turn around and take that same information and convey it back to the school administrator, associate with it, and then say, here, here's school administrator. Here is my message. That form doesn't even let the parent communicate their own religious objection the way they want to. It's pre-written and then they have this message. But, but I like to move aside. Mr. Baker, do you, do you really think that anyone is perceiving the words on form 11 as being a statement of the parents as opposed to what clearly is a statement of the state? That's that answer is in Wooley. It's like a license plate. It doesn't matter. The perceptions of people who see that as though it were from the person. It's the fact that it's on the message. So it doesn't have to be the message itself is all that matters. You don't, it's not necessary that you ascribe it as though it's from someone. All that matters is on the plate. It has this message and I have to convey it. That is compelled speech. So whether or not anybody perceives it as the parent speech, that's irrelevant. Parent has to associate with it. She has to carry that message. That's the conduit that compelled speech says, you can't make me carry that message. Irrespective of whether you think it's from me or not, I'm not a cable television network. I don't have to convey your advertisements. I don't have to convey your message. I don't have to be associated with it. And that's what Missouri does. Doesn't this provide the doubt though, a variety of forms. Let me give you an example. So you go and you fill out a driver's license application in many States. The driver's license application says what the money is going to be used for. So suppose it says the money's going to be used for filling potholes, building highways, et cetera. When you sign that form that has that information on the driver's license application, is that compelled speech? Are you agreeing with that? Even though you don't want your money used for that particular purpose. That is not, no, I can sign that. That's a transaction between me and the government. But if they told me that, Hey, Mr. Baker, you have to go communicate something else. Take this form that we have this government message. Now you've got to go carry this and go give this to your neighbor. That's where we're, that's what we're talking about. It's the Edison billing. So this transaction, they can say all the things they want to, to the parent. What they can't make me do is take that billing insert and go give it to someone else. What they can't do is make me take this government message on form 11 and make me say it in my communication to the school administrator. So that's what this is. And that's the compelled speech part of that. They are making me be a conduit in my message to the school administrator. So counsel, the analogy I think of is the back of the driver's license in many, many States that strongly encourages you to donate your organs. And some of the people, you know, push that, uh, even at the license places, are you saying that that invalidates in some way? You don't have to apply for a driver's license to get one. No, no judge. Look, the parents aren't applying. I mean, the Missouri has turned this into a speech, religious speech application, but that's not what we're, what's happening here. They're not, if this isn't a transaction just between the parent and the health department or the parent and DHSS, It is a transaction between them and the school administrator. Missouri says, you've got to communicate your religious objection to the school administrator. And the only way they can do it is to take this government form that has a speech. And yet they have to get conduit for that speech to the school administrator. That's why all these analogies aren't applicable judge. This is the real problem. The real problem then here is that you have to give it to a, to the principal. And I understand that, but does it make any difference if the principal him or herself is a government employee so that it's maybe analogous to turning in a form to a DMV person or somebody at the department? What, what makes it so constitutionally objectionable that it has to go to another government employee? Well, because it's not a government, it's a school, but they say you have to communicate to a school administrator. So the fact that I have to make a communication to someone, I don't think is the pivotal point about compelled speech. So think about the ramifications. If, if I have to make a communication and the government can hijack that communication, why isn't that okay on a license plate? Why isn't that okay? In any other circumstance, it's not the government cannot make me convey whatever message it wants in my communication to a third party. A school principal is not DHSS. It's not the state of Missouri. These are independent. These are people. And that's what we have to do. But I want to focus. Mr. Baker, I see you're, you're well into your rebuttal time. Do you wish to reserve some? Yeah. Yes, I will. Very well. Thank you. The quarter here from Mr. Osset. Thank you. Thank you,  Baker. Thank you, your honors. And may it please the court. He's used to set the deputy solicitor general for the state of Missouri. I actually don't agree with it. I actually don't disagree with Mr. Baker. This is a straightforward case. A violation of the free exercise clause is predicated on coercion. And it's difficult to see in this case, what that really is. The form 11 does not require. Mr. Baker to. Affirm or otherwise agree with the state's pro vaccination message on that form. Indeed, when he fills out that form or any current fills out that form. They're effectively rejecting the state's pro vaccination message, which is consistent with the first amendment. That is expressive conduct and speech. It is not on its face. Form 11 is a neutral and generally applicable law. It does not favor one religion over another. It is not hostile to religion. As I believe. One of your honors pointed out. It's not phrasing course of language. We strongly encourage you. We being the state. Strongly encourage you to have your children vaccinated, but that decision is ultimately yours. Yours being the parents. The parents do not have to affirm that statement. They don't have to read it. They don't even have to acknowledge. Do I understand the Missouri law? That one parent can make this decision. The way the law is written. As the law is written. In the statute. One 67.1 81. Your honor. Yes. One parent. Can object to the child being vaccinated on religious grounds. Yes. Correct. Related question I have about Missouri. Is you used to have this form on your website. Now you put great big sample on it. Why the record doesn't show. And you didn't give us any indication. Why does it say sample? As you point out, your honor, from the record, it's not exactly clear. I'm not exactly sure why it was. Before it wasn't a sample and now it is a sample. What I can say is currently under the regulation. Anyone who desires to receive the form 11. Can do it through the mail and do it through a one 800 toll free number. There are multiple avenues to try to acquire that form that frankly, from this petition. The plaintiffs have not exhausted those other avenues to try to  So I can't tell you from the petition, for example, what I can say is that that form can be easily attainable. Through other means that have not been exhausted in this case. If I may. There was a question earlier about. What exactly the bakers and cheeks and Robinson family. If they actually filled out a form or not. What I can tell you from. The petition, And this is at page 16 of the appendix and 22 to 23. Is that the cheeks, the clever high school students, if you will. My understanding is that they did not fill out the form. They had the written objections. It's the same thing with the Robinson's. That's pages 16, 22 to 23 of the appendix. They also, my understanding is they did not fill out a form as well. They had written objections that were not recognized. In terms of BWC graduating. I'm not seeing anything in the record that would. Say one way or the other. And then for WB at page 22 of the appendix. That was another. Another situation where a written statement was provided to crossroads, but it was not recognized. In lieu of a form 11 and official form 11. What about the potential future harm though, that they could suffer from. From having to fill it out. As opposed to council said, these kids return to school every year. You're still going to have that issue on a year to year basis. It doesn't seem that speculative unless one of them has graduated, which is something that judge grinder came up. What about the standing emanating or coming out of that? Well, your honor, the regulation makes it very clear that this is a one-time thing for children. So as soon as they do it, they don't have to do it again. And it's going to be on file with the school. I think if, if there is this. As I understand the potential harms here. Is the either have to fill out the form and be properly vaccinated. Excuse me, properly exempted. Under one 67.81. Or they have to be vaccinated. Otherwise they cannot attend school. And as I understand their allegations and the record. Is they're saying we don't want to fill out the form. And if they don't fill out the form, their children cannot go to school. And if they, and if they don't send their children to school, they can possibly face misdemeanor charges in Missouri. Because it is tied into the mandatory education component under Missouri law. That's how I understand their injury, but in terms of them having to do this every year or every school year, as I understand it from the regulation, they only have to do this one time and that's per child. Well, take your point. Say they do it one time. They haven't done it yet. They refuse to do it because they don't, they, you know, they disagree with it. Their kids can be thrown out of school. Isn't that a potentially imminent injury that they, that they would suffer if they don't go through with the, the process. It could, it could be your honor. And for the reasons we say in the briefing, we believe that on the merits, it would be all right, but we, we, we think they've at least the state's position is they've at least alleged enough. If the, if their allegation, if the injury is, if we don't fill out, we can't go to school. That's enough, at least for our purposes. And we would just get to the merits, but if this court, you know, the reason I point that out is in the, the nickel out case from the sixth circuit at page three 16 of that opinion, what was interesting about that case is that the woman went into the Detroit clinic and was these two nurses that told her this wouldn't violate your religious beliefs, but she ended up leaving the clinic with a form for her children. And the sixth circuit found in that case that there was no injury in fact, in that situation. So I suppose if you have a similar case, then yes, I don't see what the injury is and why there would be standing, but otherwise, as I understand their complaint, I think they've done enough to get over the standing threshold, but that's, that's the state standpoint on that, on that point, your honor. The on its face, as I pointed out earlier, this law, this form is neutral and generally applicable. One, one case that I would actually direct the court for guidance was actually a case that I think is pretty on point. That's the Phillips case from the, from the second circuit there, the court looked at the Supreme court's dicta in Princeton, Massachusetts to say that the right to freely exercise your religion does not mean that your child or you for that matter can go out and spread preventable diseases to your community. That was dicta, but it was consistent with the Kumi at page five 31, that as long as the law is neutral and generally applicable, it need only satisfy rational basis review. And I would also point out that Jacobson long held for a very long time that the state has this power to protect its citizenry and you utilize police power to promote the health and work welfare of its citizenry. So with all those precedents in mind, and even with that dicta in mind, I think, I think this law is neutral and generally applicable and it's satisfied rational basis review and pursuant to your honor's decision in Joby Parson at pages 11, 19 to 20, that was exactly that situation. It was new. It was nothing but a neutral, generally applicable law. It's satisfied rational basis review and this court did not find it. It violated the Missouri informed consent law issue in that case. I think that case dealt with acknowledgement of the fetal heartbeat and of the ultrasound and of the booklet that I believe the other side had said was inconsistent with the religious police, but they were not required to read the actual booklet itself. So acknowledgement mere acknowledging something or certifying receipt of something was not the same thing as agreement. And here it's the same thing. We're not requiring anybody. Nobody has to read it. Nobody has to certify that they've read it. They don't have to agree with it. There's nothing. It's very clearly. Well, let me, let me interrupt. Let me interrupt you to ask this court carefully and does says that doesn't apply to hybrid rights. That part of the opinion. I think you're talking about right. Doesn't apply to hybrid rights. Be sure I've got the footnotes, footnote five, got it in the right place. What do you say to that? Yeah, it's in the right place. Sorry. I said it wrong. It's footnote three to proceed. Correct. Yeah. And in that case, your honor, I believe the court did not weigh in on the hybrid rights here because along with the undue burden claim in that case, it was not pleaded in the complaint. So it wasn't before the court on the merits in terms of hybrid rights. We don't believe there's anything as just Strauss pointed out in telescope, any conduct that crosses over to speech here again, by filling out the form, your honor, it is, they are exercising the right to speech and their religious rights. They are getting an exemption and they are rejecting the state's pro vaccination message. And so we don't think there's a hybrid rights issue. And in dough, that wasn't even addressed court, even if it was, this is a situation that does not cross over into speech. So we think it's consistent in that respect. The other thing I would point to point to the court, I did submit a 28 J on this. The justice for such as concurrence in Brooklyn diocese, I thought was very persuasive on this point that the law in Jacobson, the Massachusetts law in Jacobson that had an opt out, an opt out provision for those who objected to it definitely passed a rational basis review. And I believe he said would have probably passed strict scrutiny because of that opt out provision. And I understand it's a concurrence, but I think it is persuasive based on the current landscape and the existing law at issue that even, even something like this has an opt out that's neutral, that's generally applicable does not force them to agree with us or not, or otherwise it simply gives them the thing that he's looking for, which is an exemption. I think it satisfies rational basis. And I believe that it's a constitutional law. And on that point, I think, I think just as gorgeous, of course, it just concurrence is fighting in that respect. Your honors. If there are no other questions, we would probably just, we would just rest. All the appellees and clean the state would rest on their briefing and ask this court from the judgment. Very well. Thank you, Mr. Ossett hearing no other questions. Mr. Baker, you have a little bit of a rebuttal time. I believe. Thanks judge. Jacobson is what the lower court said, gave an automatic pass to these mandatory vaccines. The Supreme court in Roman Catholic diocese of Brooklyn said Jacobson doesn't apply the way that the lower courts have been applying it. I gave a 28 J decision from the second court, recognizing that this court went into an analysis of Jackson and in Ray Rutledge. That analysis is not a suspect now under the new Supreme court ruling about Jacobson. Let me turn to hybrid rights. This is where I started in the beginning. This is a hybrid rights case. It has many fundamental rights. State of Missouri requires these parents. They cannot raise these children the way they want. They cannot provide informed consent. The children's bodily integrity are violated. The parents have to violate their own religious beliefs and they have to speak. They have to communicate. And all that together says that with that equal, the, the neutral generally applicable law does not apply. They have to have a compelling state interest now for that entire regiment to send parents to school because they don't violate the religion or don't give informed consent for these vaccines that violate the children's bodily integrity. And we'd ask that you so rule on that. Very well. Thank you, Mr.